UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT F. WELLS,

    Petitioner,

v.                                             Case No. 8:04-cv-2349-T-23EAJ

SECRETARY, Department of Corrections,

    Respondent.
_____/

**O R D E R**

    Wells petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his conviction for first degree murder, for which conviction Wells serves life imprisonment without the possibility of parole. An earlier order (Doc. 30) denied relief based on four claims of ineffective assistance of counsel in ground one and rejected ground two as procedurally barred from review. The circuit court granted a certificate of appealability and disagreed that ground two is procedurally barred. This case is now on remand to review the merits of ground two, which asserts a claim that allowing the reading of Deputy Gattarello's earlier testimony violated the Sixth Amendment's confrontation clause.

    A jury convicted Wells of first degree murder of his girlfriend, however, the conviction was reversed on direct appeal. The second trial ended in a mistrial. In a third trial, Wells again was convicted of first degree murder and sentenced to life imprisonment without the possibility of parole. The conviction and sentence were affirmed on direct appeal (Respondent's Exhibit 4) and Wells's Rule 3.850 motion for

post-conviction relief was rejected by the state court (Respondent's Exhibit 9), a ruling that was affirmed on appeal (Respondent's Exhibit 13).

## FACTS[1]

The evidence presented at the third trial shows that the victim and her adult son lived with Wells and his adult son.  Wells and the two sons spent the evening of March 27, 1998, drinking beer and Schnaaps.  About 11:00 p.m. an argument erupted inside the home between Wells and the victim after she returned from work.  During the argument, the victim threatened to leave Wells and call the police.  Wells went outside and pulled the telephone wires from the junction box.  One of the sons fixed the telephone line.  After further argument, Wells stated, "Sherry, I love you, but you got to go," and went outside and again ripped the telephone lines from the junction box.  Upon re-entering the house, Wells rushed toward the victim (who was sitting on the couch talking with the two sons).  He pulled a gun, shot the victim in the wrist, and struggled with the victim.  The two sons fled to a nearby restaurant and called the police.  One of the boys heard additional shots.

A neighbor, who could see inside the front window and the open front door of the Wells's home, heard several shots and saw Wells both point a gun at the victim as she walked past him and shoot her in the head.  The neighbor heard Wells yelling, "I'm sorry, I didn't mean to shoot you, I love you."  Wells ran across the street to the neighbor's house seeking assistance, but the neighbor would not respond because Wells still held the gun.  Wells ran to another house and the neighbor heard Wells yell, "Call the police.

---

[1] This summary of the facts derives from Wells's brief on direct appeal (Respondent's Exhibit 2) and is copied from the earlier order (Doc. 30) that rejected the ineffective assistance of counsel claims.

- 2 -

I accidently shot my wife." The neighbor saw Wells return to the victim and appear to try to comfort her.

The medical examiner testified that the victim had gunshot wounds to the wrist and the neck and two to the head (one that grazed the head and one—the fatal shot—that struck the temple).

Each fact in this statement of facts was evidenced at trial by testimony other than Deputy Gattarello's testimony.

## **STANDARD OF REVIEW**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas

- 3 -

corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002). See Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."). Moreover, the phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme court "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412.

In a per curiam decision without a written opinion the state appellate court affirmed Wells's conviction and sentence on direct appeal. (Respondent's Exhibit 4) The state appellate court's per curiam affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Wells bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001). However, because the state appellate court affirmed Wells's conviction and sentence without a written opinion on direct appeal, no finding of fact exists to which this court can defer, except for specific findings by the trial court.

Wells must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Ground Two:

The conviction from the first trial was reversed and the second trial ended in a mistrial. This petition challenges Wells's conviction from his third trial. Deputy Gattarello testified at the first trial but not the third trial. Instead, the prosecutor read to the jury Gattarello's testimony from the first trial. Wells contends that the prosecutor failed to adequately show the unavailability of Gattarello.

Gattarello left law enforcement after the first trial and joined a civil organization providing aid in Kosovo. He was indisputably out of the country during the second and third trials. Before the third trial commenced the prosecution filed a notice of intent to

use Gattarello's testimony from the first trial, a topic discussed during a "motions hearing."

> [THE PROSECUTOR]: There was a motion of notice to use trial testimony. We have had a former Sheriff's Department Officer, Deputy Michael Gattarello. He testified in the first trial and a transcript was done, cross-examination was done and presented to the jury and the Defendant. Between the first trial and second trial the deputy left the Pinellas County Sheriff's Department and became involved in a civil organization that renders aid and went over to Kosovo and was unavailable for the last trial. We ran a motion. We ran a motion to allow that testimony; it was granted and the testimony was read from the transcript. We had an Assistant State Attorney that played the part of Deputy Gattarello, which read their parts, and the testimony was presented to the jury through that means.
>
> I have my investigator Mr. Cringer here who can confirm that that witness is still out of the country in Kosovo and unavailable for purposes of the rules for testimony in this case. If the Court desires, I have case law that I cited in my motion, and I have case law to present, the same case law that I previously argued when it was granted in the second trial that he was unavailable. He is still unavailable. I think he has got a two year stint when he goes over there . . . .
>
> So he is unavailable and out of the country, out of the hemisphere. We'd ask that his testimony be allowed to be presented to this Court. All the necessary elements are there: he is unavailable [and] he was cross-examined by the same defense counsel. So we would ask that that testimony be allowed to be presented.
>
> . . . .[2]
>
> If the court wishes to show the diligence of the state—the defense stipulated last time that he was in Kosovo and if they need the testimony that he still remains there—I have that witness available if the court or the defense wishes to have it.
>
> . . . .

---

[2] In response to the trial judge's invitation, the prosecutor recited for the record several state cases that address the question of "unavailability."

- 6 -

THE COURT: Okay. [Defense counsel], were you objecting to the representation that the witness is unavailable by a geographic area? I can take testimony from their witness.

[DEFENSE COUNSEL]: We assume he is still in Kosovo.

THE COURT: You can release the witness. [Defense counsel], you are opposed to the motion?

[DEFENSE COUNSEL]: Yes, we are. The critical difference between the situation before us today, and the one that was faced by the trial court at the second trial, is that the parties all the parties were not aware that this witness was not within the United States the day or so before the trial. And so there was a time crunch involved in determining, well, can we fly him back, or can we do a video-conference, can we do a telephonic testimony. And we just didn't have the time to do that. So obviously, the court allowed the testimony in. The State has now had several months, not only to confirm the exact location of this individual, but to make contact with him and make arrangements to produce this testimony before the jury.

I think the Court can take judicial notice that video-teleconferencing equipment is now worldwide. It would absolutely be no problem with this individual if the equipment is not in Kosovo, which I certainly doubt, flying out of Kosovo to a nearby city, such as Rome, Paris, Berlin giving his testimony [and] then flying back. At the very least, they can put him on a phone, and we can take his testimony over the phone. The State recently prosecuted, within the last six or eight months, a case in which a witness testified from Australia by video-conferencing. The equipment is there. We have the equipment here. There is no reason why, given the months since the last trial, that this could not be arranged. It is just not a big deal any more. So the time crunch that we faced in the second trial does not exist, and our position is the State has not shown that he is unavailable, simply that he is someplace else. Thank you.

[THE PROSECUTOR]: The Court recalls that being in Sweden was sufficient to be unavailable,[3] and Kosovo is a war zone. I mean, if what they are indicating—they are guessing that there is availability of that kind of stuff in a war zone. Judge, getting in touch with him is practically impossible. There is -- he is unavailable, Judge. Even if we got in contact with him there is no way to compel him to do any of the things that—being out of the country, and unavailable for the period that he is going to be unavailable, and they have prior testimony that is there, and under the case

---

[3] The prosecutor was referring to one of the cases he contended supported his position.

- 7 -

law, we have shown the Court that we should be allowed to present that testimony.

THE COURT:  Back to the point that he is unavailable, I understand that he geographically cannot be here, but in response to [defense counsel]'s argument that he could appear by teleconferencing or telephone.  Why is it that he cannot do those things?

[THE PROSECUTOR]:  Judge, he is in a war zone.  We had an e-mail address from his wife at the last trial.  We tried to e-mail him a couple different times and we never got a return e-mail.  We have had no contact with him.  We have had no other way to contact him. This is a war zone situation.  It is not Western Europe.  This is a completely different primitive situation, and that is another reason that he is more unavailable.  If the Court held Sweden was unavailable, then the Court should definitely hold Kosovo unavailable.

[DEFENSE COUNSEL]:  Judge, it is not a war zone.  There is no war.  It is peace keeping activity under the auspices of the United Nations and the Joint Task Force by the United States and other military powers.  The equipment is there.  They have got telephones, and my recollection is when we talked to his wife, Liz Gattarello, who works for the Department of Juvenile Justice, she indicated, I believe at one point, that he had done a telephonic deposition in some other unrelated case.  My point is that at that time [(the second trial)] we had a time crunch, and maybe they didn't get a good e-mail address, but what efforts have been made to determine this unavailability? Repeating the mantra of "He is unavailable, he is unavailable," doesn't make it so.  They have got to show why he is unavailable.  And simply being in another country is not, in our view, sufficient.

THE COURT:  [Defense counsel], I'm going to overrule the objection and find the witness is unavailable, and the testimony that was previously provided at trial and subjected to cross-examination on the same day and allow the testimony to be presented to the jury should either side wish.

Respondent's Exhibit 1, Addendum Vol. I at 17-24.

The controlling Supreme Court precedent at the time of the third trial was Ohio v. Roberts, 448 U.S. 56 (1980),[4] which established a two-part test for determining the admissibility of statements against a Confrontation Clause challenge. Roberts requires that (1) the witness be unavailable and (2) the testimony have sufficient indicia of reliability. Wells challenges only the first part, availability,[5] but not based on Gattarello's absence from the United States. Instead, the essence of Wells's contention is that the prosecutor made no good faith attempt to arrange an alternative means for Gattarello to testify, such as a video-conference. See Barber v. Page, 390 U.S. 719, 724-25 (1968) ("[A] witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial.").

The implication of the prosecutor's comments is that the finding of unavailability for the second trial should justify the same finding for the third trial. But Gattarello's absence from the country was not discovered until just before the second trial commenced. As a consequence, arranging an alternative to the witness's physical

---

[4] Crawford v. Washington, 541 U.S. 36 (2004), overruled the second part the Roberts test, substituting instead a requirement that the defendant had a prior opportunity to cross-examine the declarant. Because Gattarello's testimony from the first trial was subjected to cross-examination, the testimony complied with the Crawford requirement. However, the reasonableness of a state court's ruling is reviewed based on the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Accord Espy v. Massac, 443 F.3d 1362, 1367 (11th Cir. 2006). And Crawford is not applied retroactively. Espy, 443 F.3d at 1367.

[5] The "sufficient indicia of reliability" requirement is met because the challenged testimony was both from the first trial and subjected to cross-examination by Well's same defense counsel. See Mancusi v. Stubbs, 408 U.S. 204, 216 (1972) ("Since there was an adequate opportunity to cross-examine Holm at the first trial, and counsel for Stubbs availed himself of that opportunity, the transcript of Holm's testimony in the first trial bore sufficient 'indicia of reliability' and afforded 'the trier of fact a satisfactory basis for evaluating the truth of the prior statement.' Dutton v. Evans, 400 U.S. [74] at 89, 91 S. Ct. [210] at 220 [(1970)].").

presence was not practicable, whereas the state had several months to arrange for Gattarello's presence for the third trial, even if only by video-conference. The prosecutor's response was that they unsuccessfully attempted several times to contact Gattarello by email and that Kosovo was a war zone, inferring that establishing a video-conference was not practicable. Based on these representations the trial judge ruled that Gattarello was unavailable. Determining unavailability of a witness, and as a consequence the admissibility of alternative evidence, is reviewed for abuse of discretion. Randolph v. State, 853 So.2d 1051, 1062 (Fla. 2003); Stano v. State, 473 So.2d 1282, 1286 (Fla. 1985), cert. denied 474 U.S. 1093 (1986). Accord United States v. Amaya, 533 F.2d 188, 191 (5th Cir. 1976)[6] ("Determination of unavailability is a judicial exercise reviewable by this Court only for abuse of discretion."). The appellate court's rejection of Wells's abuse of discretion argument was neither contrary to nor an unreasonable application of controlling law as established by the Supreme Court. See Mancusi v. Stubbs, 408 U.S. 204 (1972) (testimony from earlier trial permitted on re-trial because witness had moved back to his native Sweden). See also Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

Nevertheless, even if his confrontation right was violated by admitting the prior trial testimony, Wells shows no prejudice. Gattarello's testimony revealed that, upon his arrival, Wells was beside the victim and attempting to apply pressure to the wound.

---

[6] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

When the paramedics arrived, Wells stated, "I shot her.  She shouldn't have made me mad, that is why I shot her."  The fact that Wells shot the victim was cumulative to the testimony of the neighbor who testified that he saw Wells shoot the victim in the head.  Consequently, if the reading of Gattarello's prior trial testimony violated Wells's confrontation right, the error was harmless.

Accordingly, ground two in the petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk shall enter a judgment against Wells and close this case.

ORDERED in Tampa, Florida, on August 26, 2010.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE